**In re NEWPORT SAVINGS AND LOAN ASSOCIATION, Claimant, Appellant.**

**UNITED STATES of America, Plaintiff, Appellee,**

v.

**REAL PROPERTY LOCATED AT 185 HARGRAVES DRIVE, etc., et al., Defendants, Appellees.**

No. 90–1793.

United States Court of Appeals, First Circuit.

Heard Dec. 4, 1990.

Decided March 21, 1991.

Quentin Anthony, with whom Sheffield & Harvey were on brief, for claimant, appellant.

Michael P. Iannotti, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., was on brief, for U.S.

Vincent R. Patrone, with whom Winograd, Shine & Zacks was on brief, for Arnold Sundel and Richard W. Zacks.

Before BREYER, Chief Judge,
CAMPBELL and CYR, Circuit Judges.

BREYER, Chief Judge.

This appeal, in effect, asks how an "innocent lienholder"—a bank holding a mortgage—can exercise its "ownership" rights, to foreclose upon, and to sell, property that the Government wants forfeited under the drug laws. We conclude that the answer to the question is found in the "customs laws" of the United States. *See* 21 U.S.C. § 881(d). Since the appellant, an "innocent lienholder" who wants to foreclose, did not follow the relevant customs laws proce-

dures, we affirm a district court determination that it may not foreclose at the present time.

## I

### Background

The Government has seized two pieces of real estate, one residential, the other commercial. It says that William Sundel, either directly or indirectly, bought these properties with the profits of drug transactions. It points to relevant drug-forfeiture statutes, which provide that:

1) "[a]ll ... things of value furnished ... by any person in exchange for a controlled substance [and] all proceeds traceable to such an exchange ..." are subject to forfeiture, *id.* § 881(a)(6);

2) the "Attorney General" may "seize[ ]" such property before forfeiture, *id.* § 881(b); and,

3) after seizure, the property "shall be deemed to be in the custody of the Attorney General, subject only to the orders and decrees of the court ... having jurisdiction thereof." *Id.* § 881(c).

The appellant, Newport, is a bank that holds mortgages on the properties. It holds a mortgage on the seized house to secure a debt (to the bank) of about $239,000; it holds a mortgage on a 99-year lease for the seized commercial property to secure a debt (to the bank) of about $734,000. It has received no mortgage payments since the Government seized the property on July 17, 1989. It would like to foreclose upon its mortgages and to sell both properties. It points out that the drug-forfeiture statute says that an owner who did not know of, or agree to, the unlawful use of his property, is an innocent owner, and that

no property shall be forfeited ... to the extent of the interest of [such] an owner. . . .

*Id.* § 881(a)(6). The Government concedes, and the district court specifically found, that Newport is an innocent owner.

The forfeiture proceeding is currently in progress in the district court. During this proceeding, Newport filed a motion in the district court, asking the court to grant it "leave" to foreclose its mortgages and to sell the properties. Newport pointed out that its mortgages were in default. It said that the mortgage debt exceeds the value of the properties. And, it warned that, with every passing day, a falling real estate market weakens its ability to recover (through sale) the money it has loaned. The district court denied its request for "leave" to foreclose. Newport now appeals that denial.

## II

### Appealability

■ The Government argues that the district court's denial of Newport's motion for "leave" to foreclose is not an appealable order. We agree that the motion may seem an odd one, for, in the forfeiture context (unlike bankruptcy, *see* 11 U.S.C. § 362(a)(4) & (d)(2)), no statute seems to say that anyone needs a federal court's approval in order to bring a state-law foreclosure action. Yet, as a practical matter, it may be impossible to find a buyer at a foreclosure sale for property that is "in the custody of the Attorney General," 21 U.S.C. § 881(c), and to which the United States asserts a legal claim. Thus, we look past the motion's title, and we assume that it is a motion asking the district court to order the Government to release the property from its "custody" so that Newport can foreclose upon, and sell, it.

Characterized in this way, the determination of the district court, while not appealable as a "final decision," 28 U.S.C. § 1291 (for it does not finally determine the claims asserted in the forfeiture proceeding), is nonetheless appealable as a "collateral order." *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). Such an order must "(1) 'conclusively determine the disputed question,' (2) 'resolve an important issue completely separate from the merits of the action,' and (3) 'be effectively unreviewable on appeal from a final judgment.' " *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522, 108 S.Ct. 1945, 1949, 100

L.Ed.2d 517 (1988) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)). These same features characterize the order before us.

The order conclusively determines a matter fully resolved below, namely whether an innocent lienholder can foreclose on seized property in the Government's custody. And, this right is unrelated to the issue of whether or not "drug money" was used to pay for the property. *See Van Cauwenberghe*, 486 U.S. at 529, 108 S.Ct. at 1953; *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277, 108 S.Ct. 1133, 1137, 99 L.Ed.2d 296 (1988). The order determines an asserted right that Newport cannot vindicate on a later appeal, namely the right to exercise *now*, before a final forfeiture determination, the same state-law foreclosure remedies that it could exercise if the Government had not seized the property. That right may be important in this case (where the debt allegedly exceeds the value of one of the properties), for a significant postponement of its exercise could mean added loss for Newport if the real estate market falls further. And, even if market values stay constant, Newport may be harmed. The consent decree says that Newport "is entitled to ... interest from the date of seizure to the date of sale or disposition of the property," but that clause does not say that the Government must pay Newport interest. It may simply give Newport permission to collect interest from foreclosure sale proceeds, in which case Newport might find it impossible to collect the interest owed.

Moreover, the legal question itself is an important one. *See In re Recticel Foam Corp.*, 859 F.2d 1000, 1003–04 (1st Cir. 1988). Drug-related forfeiture proceedings have become common. They may frequently implicate the property rights of innocent persons. Yet, the parties have not pointed to any well-settled law defining those rights while the property is in the Attorney General's custody, pending a forfeiture proceeding's outcome.

Consequently, we proceed to the merits of the appeal.

### III

### *The Merits*

■ The legal question before us is whether the district court lawfully could refuse to permit an innocent lienholder, such as Newport, to foreclose upon, and to sell, mortgaged property that the Government wants forfeited, before forfeiture proceedings have concluded. Newport, pointing to a statutory provision in Title 28 of the U.S.Code, 28 U.S.C. § 2465, argues that the court *must* issue an order releasing such property from the Government's "custody" so that an innocent lienholder can exercise its right to foreclose. The Government, pointing to the Quiet Title Act of 1972, 28 U.S.C. § 2409a, argues that federal courts have *no* power to order the Government to release seized real property before the related forfeiture proceeding has concluded. In our view, neither of these statutory provisions directly controls the court's power to impose appropriate protective orders during forfeiture proceedings—orders that seek to permit private parties to preserve the value of their property interests while also adequately safeguarding the Government's interest in eventual forfeiture. Rather, Congress has provided that courts are to determine disputes about such orders (disputes such as the present one) in accordance with the "customs laws" of the United States, *see* 21 U.S.C. § 881(d), which set forth procedures for releasing such property upon the posting of a proper bond. *See* 19 U.S.C. § 1614.

■ a. *Newport's argument.* Newport argues that it has an absolute legal right to foreclose upon real property in the Government's "custody," just as if the property were in the hands of a private person. It finds that right in a procedural provision of Title 28 of the U.S.Code, which says:

Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant. ...

28 U.S.C. § 2465. Newport says that the district court's finding that it is an innocent lienholder amounts to a "judgment for the claimant;" hence, the court must order the Government to "return" its "property ... forthwith."

We do not accept Newport's reading of the statute for several reasons. First, the statute's language does not apply directly to the present case. Strictly speaking, the Attorney General has not "seized" Newport's property (which is a lien) nor is he attempting to do so. Thus, in a sense, there is nothing for the Attorney General to "return."

Second, and more important, the statutory provision is not directed at the problem that underlies the present case. Its language suggests application where the Government and a private party disagree about who owns a piece of property and a court then decides in favor of the private party. The conflict here, however, is not one of conflicting claims to Newport's property interest. Rather, the conflict arises because the Attorney General has taken "custody" of a piece of physical property in order to protect the Government's claims to different, potentially forfeitable interests in that property (the *Sundel* interests), not Newport's interests. Newport, the holder of a nonforfeitable interest, wishes to exercise rights that (it believes) are inconsistent with the Government's protective custody. The legal problem is one of reconciling two provisions of the drug-forfeiture law, one provision that authorizes protective custody, 21 U.S.C. § 881(c), and another that says specifically that "property" shall not be "forfeited ... to the extent of the interest of [an innocent] owner." 21 U.S.C. § 881(a)(6). The "return-to-claimant" provision to which Newport points seems beside the point.

Third, the history of the return-to-claimant provision shows that it does not address the problem of the simultaneous existence of forfeitable and nonforfeitable interests in the same piece of physical property. That provision is a lineal descendant of customs statutes that explicitly gave a claimant, or claimants, the right to recover a seized "vessel, goods, wares or merchandise ... forthwith" once "judgment" was "rendered" or "given" in their favor. *See* 28 U.S.C. § 818 (1940); Act of March 2, 1799, ch. 22, § 89, 1 Stat. 627, 696; Act of July 31, 1789, ch. 5, § 36, 1 Stat. 29, 47–48. Customs laws provided, however, that the *entire* vessel, good, ware, or other physical piece of property was "guilty" of a customs violation; hence, the *entire* piece of property was subject to forfeiture, including the interest of an innocent lienholder. *See generally Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683–86, 94 S.Ct. 2080, 2091–93, 40 L.Ed.2d 452 (1974). An innocent lienholder might ask the Government to give it all, or part, of the sale proceeds from seized property, or even the property itself, and the Government might do so; but, the Government would do so *as a matter of grace. See id.* at 689–90 n. 27, 94 S.Ct. at 2095 n. 27. The Government did not have a legal obligation, the return-to-claimant provision notwithstanding, to return mortgaged goods "forthwith" at the request of an innocent mortgagee, at least, not in the absence of a bond. *See* pp. 479–480, *infra.*

Fourth, the differences between the new drug-forfeiture statute and the older customs laws make no significant difference here. We concede that the drug-forfeiture statute does not make the *entire* piece of physical property "guilty;" it says that property shall *not* be forfeited "to the extent of the interest of an [innocent] owner;" it thereby permits an innocent mortgagee to recover the value of its interest as a matter of *right,* not *grace. Compare* 21 U.S.C. § 881(a)(6) *with* 19 U.S.C. § 1618. And Newport can argue that the language of the return-to-claimant statute *could* be read to encompass (and require return "forthwith" of) the interest of the innocent owner. But, the language *need not* be so read. The fact that an innocent lienholder's interest is not forfeitable does not necessarily mean that the lienholder can exercise every right associated with that interest, just as if the Government had never taken custody of the physical property. It would seem odd to read the innocent-owner and the return-to-claimant provisions as

permitting the holder of even a small, "innocent" interest in even a large piece of forfeitable property to require the Attorney General (even without a protective bond) to release the property from his "custody" prior to forfeiture, for the Government would thereby lose the very security in respect to its forfeitable interest that the "custody" provision seems designed to provide.

For these reasons of language, history, and purpose, we read the return-to-claimant provision as requiring a return of property "forthwith" only after a determination that there is *no* forfeitable interest in the property. That is to say, it does not govern disputes about the extent to which lienholders may exercise lien rights in physical property over which the drug-forfeiture statute gives the Government "custody" pending forfeiture.

■ b. *The Government's argument.* The Government rests its argument for absolute power to control the Sundel properties and effectively to prohibit foreclosures (pending the outcome of the forfeiture proceedings) on the Quiet Title Act of 1972, codified at 28 U.S.C. § 2409a. The relevant subsection reads as follows:

> The United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days; and if the final determination shall be adverse to the United States, the United States nevertheless may retain such possession or control of the real property ... upon payment to the person determined to be entitled thereto of ... just compensation....

28 U.S.C. § 2409a(b). The Government argues that any court order requiring it to permit foreclosure on real property that it has seized would "disturb ... [the United States] in [its] possession or control" of that real property, contrary to the statute's instruction. The Government adds that three district courts have accepted this reading of the statute, and that no court has directly rejected it. *See United States*

*v. Parcel of Real Property Known as 708–710 West 9th Street,* 715 F.Supp. 1323, 1327 (W.D.Pa.1989); *United States v. Real Property Constituting Approximately Fifty (50) Acres,* 703 F.Supp. 1306, 1312 (E.D.Tenn.1988); *United States v. Real Property Titled in the Name of Shashin, Ltd.,* 680 F.Supp. 332, 335 (D.Haw.1987).

We do not accept the Government's reading of the statute, however, for two related reasons. First, the language of this statutory provision makes it inapplicable in a typical drug-forfeiture case. It says that the "United States shall not be disturbed in possession or control of any real property involved in any action *under this section....*" An "action under this section" is described in the section's title as a "quiet title action," and its meaning is elucidated in subsection (a), which says that the

> United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights....

28 U.S.C. § 2409a(a). Later subsections, which limit the circumstances under which the United States "may be named as a party defendant," refer to the action as a "civil action against the United States," 28 U.S.C. § 2409a(f), and to the adverse party as the "plaintiff." *Id.* at § 2409a(d). A drug-forfeiture action is not a "quiet title action," nor does it resemble a "quiet title" action. It is not an action in which the United States is a "party defendant;" it is an action in which the United States is a party plaintiff. Under applicable Admiralty Rules, *see* Supplemental Rules for Certain Admiralty and Maritime Claims Rule A(2), Newport is not a "plaintiff" suing the United States, but, rather, it is a "claimant" to seized property, who, the Admiralty Rules say, may "defend the action" on behalf of the property. *See id.* Rule C(6) (emphasis added).

Second, the history of § 2409a makes clear that Congress did not intend it to apply to a case like this one. The purpose of the Quiet Title Act of 1972 was to waive the sovereign immunity of the United

States, which might otherwise have barred actions involving real property brought by private citizens against the United States. *See Block v. North Dakota,* 461 U.S. 273, 282, 103 S.Ct. 1811, 1817, 75 L.Ed.2d 840 (1983). It waived that sovereign immunity by stating that the "United States *may be named* as a party defendant" in such a suit. The statute goes on to condition that waiver of sovereign immunity by, for example, imposing a 12-year statute of limitations, 28 U.S.C. § 2409a(g), requiring trial "without a jury," *id.* § 2409a(f), and insisting that the "complaint" meet certain technical requirements. *Id.* § 2409a(d).

▪ A forfeiture action, in which the United States seeks to obtain property owned by a private citizen, is not an action in which the United States might have asserted sovereign immunity as a bar to claims to the property, either before or after Congress enacted the Quiet Title Act in 1972. *Cf. General Elec. Credit Corp. v. The Oil Screw Triton VI,* 712 F.2d 991, 994 (5th Cir.1983). This is because, normally, when the United States sues as a plaintiff, it waives "sovereign immunity" in respect to any "defensive plea including a set-off to the extent of the Government's claim or for a claim arising out of the same transaction or occurrence." *See* 14 C. Wright, A. Miller, E. Cooper, *Federal Practice And Procedure* § 3654, at 202 (1985). Moreover, the qualifications of § 2409a(b)-(n) on the sovereign-immunity waiver (*e.g.,* statute of limitations, no jury trial, technical complaint requirements) seem either inapplicable in the forfeiture context or contrary to forfeiture-related law. *Cf. United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453, 456 (7th Cir.1980) (owner of property that Government seeks to forfeit pursuant to 21 U.S.C. § 881 is entitled to a jury trial).

We recognize that sometimes the Quiet Title Act might apply in special ways to actions that its language does not literally cover. For example, the Supreme Court has held that the Act "pre-empted" actions that a private party might bring against an *officer* of the Government. *Block,* 461 U.S. at 285, 103 S.Ct. at 1818. In *Block,*

the Court reasoned that pre–1972 law was not clear about just whether, or when, sovereign immunity applied in such actions, and that Congress intended the qualifications of the Quiet Title Act to apply both to actions where the Act waived sovereign immunity and to similar actions where the waiver perhaps was not truly (but was at least arguably) required. *See id.* at 284–86, 103 S.Ct. at 1818–19. Forfeiture cases, however, are neither "quiet title actions" against the Government, nor are they actions that resemble such actions. Unlike actions against Government officers, they were not devised as part of a technical effort to avoid a sovereign-immunity bar. And, there is no reason to think that the Quiet Title Act was meant to "pre-empt" claims asserted by claimants in forfeiture actions. We conclude that we must read the language of the Quiet Title Act, in light of its purpose, to mean what it says, namely that it does not apply to the kind of action at issue here. In so reading the Act, we stress that Newport is *not* bringing a foreclosure action in federal court. Any such foreclosure action, brought against the Federal Government, might well fall within the scope of § 2409a. Rather, as we have said, the action at issue is a forfeiture action brought by the Government against the property. And, Newport's motion, within that action, simply asks for release of that property so that it can foreclose against the property.

We find unpersuasive the case authority that the Government cites in support of its § 2409a argument. Two of the three district court cases justify their result simply by citing the third case. That third case, *Shashin,* rests its conclusion upon the authority of a Second Circuit case, *United States v. Bedford Associates,* 657 F.2d 1300 (2d Cir.1981), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982). In *Bedford,* a bank sued the Government, which had leased space in a private building. The bank wanted the court to declare that it had a legal right to foreclose on the building free of the Government's lease interest. *Id.* at 1303, 1315. The parties disagreed about whether the suit was one in which the United States was "named as

a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States holds an interest." 28 U.S.C. § 2409a(a). But, the only word in this phrase about which they disagreed was the word *"title,"* a word not in issue here. The court held that the word "title" might include a lesser property interest, such as a leasehold. *Id.* at 1316. In so holding, it said that even though the statute is entitled "quiet title actions," it "plainly permits a variety of suits besides the typical quiet title suit." *Id.* And, it added that the provision was "broadly conceived" by Congress. *Id.* But, these statements, in context, mean that the statute is designed, broadly, to waive sovereign immunity, not that its restrictions apply (despite its language) where the Government is a plaintiff, where the Government is trying to take property from another person, where sovereign immunity would not previously have barred suit.

We conclude that 28 U.S.C. § 2409a does not apply.

c. *This court's view.* If the statutes we have discussed neither require a court to permit foreclosure nor require it to refuse a request like Newport's, what law governs an innocent lienholder's request to foreclose on property the Government holds in custody pending forfeiture?

In our view, the forfeiture statute offers specific legal guidance. It says:

The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws ... shall apply to seizures and forfeitures [under this statute] ... insofar as applicable and not inconsistent with the provisions hereof....

21 U.S.C. § 881(d). We have previously applied customs statutes in drug-forfeiture cases, reading them *mutatis mutandis,* so that, for example, customs statutes that refer only to vehicles, goods, baggage, and similar movable items, nonetheless bring seizures of real property within their scope. *See United States v. Parcel of Land and Residence at 28 Emery Street,* 914 F.2d 1,

3 (1st Cir.1990) (§ 881(d) makes burden of proof rules of 19 U.S.C. § 1615—which also speaks of "vessel, aircraft, merchandise, or baggage"—applicable to forfeiture of real estate); *United States v. Parcels of Land,* 903 F.2d 36, 38 (1st Cir.1990) (same). The need for simplicity, the virtue of uniformity, and the benefit of learning from years of practical experience, all argue for treating both these areas of the law alike.

■ As we understand customs law and practice, a claimant seeking release of seized property must offer to post an appropriate bond. Indeed, customs law has contained release-on-bond rules almost since the beginning of the Republic. *See* Act of July 31, 1789, ch. 5, § 36, 1 Stat. 29, 47; *United States v. The Brig Burdett,* 34 U.S. (9 Pet.) 682, 683–84, 9 L.Ed. 273 (1835); D. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 8.03, at 8–17 (1991). A current customs statute, entitled "Release of seized property," says the following:

If any person claiming an interest in any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of this chapter offers to pay the value of such vessel, vehicle, aircraft, merchandise, or baggage, as determined under section 1606 of this title, and it appears that such person has in fact a substantial interest therein, the appropriate customs officer may ... accept such offer and release the vessel, vehicle, aircraft, merchandise, or baggage seized upon the payment of such value thereof, which shall be distributed in the order provided in section 1613 of this title.

19 U.S.C. § 1614. Other customs statutes and regulations set forth relevant procedures, such as procedures for determining values. *See id.* § 1606; 19 C.F.R. Part 161, Subpart E; D. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 8.03, at 8–14 to 8–16 (1991).

We need not, and do not, now hold that this statute, or current customs procedure, literally and exactly sets standards for the posting of a bond in drug-forfeiture cases. Such cases differ from customs cases, for example, in one respect previously described, namely that the statutes protect

**480**

the innocent lienholder as a matter of right, not simply through executive grace. *See* p. 476, *supra; cf.* Ship Mortgage Act, 46 U.S.C. § 961(b) (similar in this respect to the drug-forfeiture law). Thus, an appropriate bond might have to cover only the value of the Government's interest in, rather than the entire value of the seized physical property. And, the Department of Justice may not wish to follow precisely the same administrative procedures for, say, obtaining valuations, as does the Customs Service. The drug-forfeiture provision stating that the Attorney General holds such property "subject to the orders of the court," 21 U.S.C. § 881(c), would seem to give the courts adequate legal power to make appropriate adjustments.

.[7] We need not determine the exact meaning of the customs statute in this case, nor need we determine the exact scope of the court's supervisory powers, for Newport has made no effort to follow customs or other bonding procedures. Newport has not offered to post a bond. Newport did file an affidavit stating that the value of the commercial piece of property is less than the value of its mortgage. But, the record does not reflect the Government's valuation of the Sundel properties. *Cf.* 19 U.S.C. § 1606 (providing for Government appraisal of seized property); 21 C.F.R. § 1316.74 (same); 19 C.F.R. § 162.43 (same). In any event, the Government responded with what the record suggests was a denial. *See* Docket Entry 11. Moreover, the record does not contain evidence that the Government's interest in the residential property was without value.

Under these circumstances, we conclude that the court's denial of Newport's motion was lawful.

The decision of the district court is

*Affirmed.*