**THE HOME.**

**No. 14844.**

District Court, W. D. Washington, N. D.
April 8, 1946.

Karr, Karr & Tuttle and Bertil A. Granberg, all of Seattle, Wash., for libelant.

Clarence A. Lirhus, of Seattle, Wash., for intervening libelant Seattle Ship's Supply.

Jones & Bronson and Harry B. Jones Jr., all of Seattle, Wash., for intervening libelant Atlas Engine Co.

Elvin P. Carney, of Seattle, Wash. for intervening libelant Fisheries Supply Co.

Herbert O. Landon, of Seattle, Wash., for intervening libelant Sunde & d'Evers Co.

Lloyd R. Savage and Donald L. Gaines, both of Seattle, Wash., for intervening libelant Fred Rowe, d. b. a. Rowe Machine Works.

BOWEN, District Judge.

The libelant Bank filed this libel in rem against the respondent vessel seeking judgment on a promissory note and to foreclose a preferred ship mortgage securing its payment recorded April 28, 1944. Intervening libelant, Sunde & d'Evers Co., has intervened with its claim for debt and maritime liens for ship's supplies, some of which were furnished to the vessel in 1944 prior to the recording of the mortgage and some of which were furnished subsequent to the recording of the mortgage in 1944 and 1945. The other intervening libelants assert similar claims for ship's supplies and work and repairs furnished to the vessel subsequent to the recording of the mortgage in 1944 and 1945.

The money items sued for by libelant include the principal and interest now due on the promissory note, the costs of suit and also a reasonable sum to be allowed as libelant's attorney's fees under the provisions of the promissory note and the mortgage securing the note. Libelant further asks to have all of these sums paid out of the proceeds of the foreclosure sale of the vessel and her equipment before any portion of any of the claims of intervenors are paid, with the possible exception of that portion of the Sunde & d'Evers claim comprising a preferred maritime lien which covers supplies furnished to the vessel prior to the recording of the mortgage.

As to the amount of such preferred maritime lien claim, however, there is some dispute because Sunde & d'Evers did not, until a few days before the trial, undertake to allocate as between new and old items of the account certain part payments. Then that creditor did attempt to allocate such part payments to the items of the account furnished subsequent to the recording of the mortgage in order thereby to leave a larger amount protected by the preferred maritime lien covering the items supplied before the recording of the mortgage. It is contended by some of the parties that allocation of such part payments to the oldest items of the account is to be presumed in the absence of proof of intention to the contrary formed on the part of the creditor or debtor before the action was commenced.

But that contention cannot prevail here. Unlike the situation where only unsecured claims are involved, the law presumes that a creditor, like Sunde & d'Evers, having two claims, one secured by a first rank security and the other by a lower rank security, intends to allocate such part payments as are received to the payment of the claim with the lower rank security, in the absence of proof of a contrary intention. Restatement of the Law, Contracts, Sec. 394 (1) (b) (ii), Page 743, and Illustration 5, Page 746; Washington Grocery Co. v. Citizens' Bank, 132 Wash. 244, 231 P. 780; Field v. Holland, 6 Cranch 8, 10 U.S. 8, 3 L.Ed. 136.

Sunde & d'Evers Co. will, therefore, be paid $270.47, the full amount of its preferred maritime lien for all items supplied prior to the recording of the mortgage. As to the balance of its account, it will be on the same basis as other lien claimants subsequent to the mortgage.

Another question is whether the Ship Mortgage Act, 46 U.S.C.A. §§ 911, 921 et seq., permits maritime liens inferior to the lien of the mortgage to participate in a fund set aside from the sale proceeds to meet a preferred maritime lien. In this connection it is contended by some of the intervenors that before the enactment of the Ship Mortgage Act a lien later in time was prior in rank and that, unless the Ship Mortgage Act is to be regarded as changing that rule, the liens here arising subsequent to the mortgage should in their bids for prior payment displace the earlier statutory superior lien claim of the preferred maritime lien, once the fund is set aside from the proceeds of the sale of the vessel to meet the preferred maritime lien.

■ Respecting that contention, lien relationship before the Ship Mortgage Act does not compare with such relationship after the Act because in respect to the statutory mortgage and preferred maritime lien those relationships are not alike. It would seem clear that to allow lien claims arising later than the mortgage to participate in any fund taken out of the sale proceeds ahead of the mortgage for satisfying the preferred maritime lien would defeat the very purpose and provisions of the statute which expressly protects the preferred maritime lien. If the preferred maritime lien should not be paid ahead of the mortgage out of the proceeds of the sale, no matter for what reason, the provision of the statute intending that result would not be carried out and the statute would be violated. The Court, therefore, denies the right of other lien claimants to participate in any fund realized for the payment of the preferred maritime lien of Sunde & d'Evers Co. for items of supplies furnished to the vessel prior to the recording of the mortgage.

■ It has also been questioned whether under this ship mortgage the indebtedness secured thereby is to include a reasonable sum to be fixed by the Court as an attorney's fee for libelant's proctor. Upon this question counsel cite only one case, namely, The John Jay, D.C., 15 F. Supp. 937, which decided that, as between the mortgagee and the mortgagor, the mortgage lien secured the contingent amount of attorney's fees as a part of the mortgage indebtedness where the mortgage securing the indebtedness was evidenced by a promissory note containing a provision for the payment of reasonable attorney's fees to be fixed by the Court in case of mortgage foreclosure. No cases were cited where junior incumbrancers objected to attorney's fees, undetermined before the Court's decision, becoming a part of the senior mortgage indebtedness; but in this state, mortgages on land securing indebtedness evidenced by notes which in turn in language similar to that here provide for the payment of reasonable attorney's fees to be fixed by the Court are usually held to include such attorney's fee obligation within the mortgage debt protection of the mortgage lien. Cutler v. Keller, 88 Wash. 334, 153 P. 15, L.R.A. 1917C, 1116. No reason appears why the same rule should not apply in the case of preferred ship mortgages with attorney's fee and costs provisions like those in the mortgage and note here. An attorney's fee for libelant in the sum of $350 is reasonable and will be allowed and shall have the same lien rank as the principal mortgage indebtedness.

It is agreed by the parties that in this case maritime liens for supplies arising in a later year shall take priority over those created in an earlier year, and that all of such liens of any one year shall have the same rank and be paid pro rata out of any funds applicable to liens of their respective class. This agreement of course does not apply to the. statutory preferred maritime lien of Sunde & d'Evers for supplies furnished prior to the recording of the mortgage.

The proceeds of the foreclosure sale will be paid out in accordance with the following priorities:

1. Taxable costs, including taxable clerk's fees, taxable marshal's fees for serving process and conducting the foreclosure sale, a proctor's fee of $20 for each party except libelant, and an appearance fee for each party.
2. To Sunde & d'Evers Co. for its preferred maritime lien for supplies furnished prior to recording the mortgage, in the sum of $270.47.
3. To University National Bank (by its correct name) in the sum of $3,015.67 plus $0.8773 per day from February 26, 1946, to the date of entry of decree, plus $350 for its proctor's fee.
4. 1945 claims pro-rated on the following basis:
   to Seattle Ship Supply...... $194.19
   Atlas Engine Co.......... 429.56
   Fred Rowe .............. 234.17
5. 1944 claims subsequent to mortgage pro-rated on the following basis:
   to Sunde & d'Evers Co...... $ 60.63
   Seattle Ship Supply...... 22.34
   Fisheries Supply Co...... 357.83
   Fred Rowe .............. 17.42

Let deficiency judgment enter against respondents Theodore Arklis, Turner Ivey and Robert C. Quy for any deficiency over and above the foregoing.

Findings of fact, conclusions of law and decree will be settled upon notice or stipulation.