712 F.2d 991
 1984 A.M.C. 1583
 GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff
v.
The OIL SCREW TRITON, VI, Etc., Defendant.
UNITED STATES of America, Plaintiff-Appellant,
v.
The OIL SCREW TRITON, VI, etc., Defendant,
General Electric Credit Corporation, Intervenor-Appellee.
 No. 82-2200.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 22, 1983.
 
 Jack Shepherd, James R. Gough, Asst. U.S. Attys., Houston, Tex., Harry Lee Hall, Asst. U.S. Atty., Brownsville, Tex., for plaintiff-appellant.
 Jack G. Carinhas, Jr., Brian Janis, Brownsville, Tex., for intervenor-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GEE, GARZA and TATE, Circuit Judges.
 TATE, Circuit Judge:
 
 
 1
 The issue before us concerns the priorities in the disposition of proceeds from the judicial sale of a vessel subject to a preferred maritime ship mortgage. Specifically, the principal issue is whether the attorney's fees provided for in the mortgage agreement (for collection in the event of default) are entitled to the same priority over all other claims to the proceeds (except preferred maritime liens and costs in custodia legis ) as is the principal of the debt secured by the mortgage. 46 U.S.C. § 953(b). We hold that the reasonable attorney's fees so provided are entitled same priority in payment as are the principal and interest. We affirm the district court's judgment to this effect.
 
 
 2
 The vessel Triton VI was seized by federal customs officials on April 23, 1978 for violation of the federal narcotics and transportation laws (a small quantity of marijuana was found on board). Thereafter, on November 9, 1978, General Electric Credit Corporation ("General Electric"), filed a civil action in rem against the vessel, to foreclose upon a preferred maritime ship mortgage held by it. Subsequently, the United States instituted forfeiture proceedings against the vessel. 21 U.S.C. § 881; 49 U.S.C. § 782. General Electric and other claimants against the vessel intervened in the forfeiture proceedings. The foreclosure and forfeiture proceedings were consolidated for trial and disposition. By consent of all parties, the vessel was then sold by order of the district court.
 
 
 3
 The present controversy arises out of disposition of the proceeds of this judicial sale. The United States did not then dispute that General Electric's claim for principal and interest due on the preferred ship mortgage primed all remaining claims before us, and this claim and other priority debts were paid. The United States then moved that the remaining proceeds of the judicial sale be paid to it. The district court denied this motion in part, holding that General Electric's attorney's fees incurred in securing recognition and collection of the mortgage were entitled (as part of the debt secured by the mortgage) to payment in priority, 46 U.S.C. § 953(b), to the claims of the government.
 
 
 4
 The United States appeals, contending that the district court erred in according § 953(b) priority to the attorney's fees, as well as that it abused its discretion in fixing the amount of them awarded to General Electric. The United States also contends that its expenses in seizing and maintaining the vessel before it was placed in custodia legis should be accorded the same priority under § 953(b) over any debt secured by the mortgage as are the costs of preserving the vessel after it is placed under jurisdiction of the court (in custodia legis ) through arrest by the United States marshal.
 
 
 5
 Priority of Attorney's Fees Under § 953(b)
 
 
 6
 The Ship Mortgage Act, 46 U.S.C. §§ 911 et seq., provides in Section 953(b), 46 U.S.C. § 953(b), that, on judicial sale in the enforcement of a preferred mortgage, the preferred mortgage lien shall have priority over all claims against the vessel except (1) preferred maritime liens and (2) costs and expenses in custodia legis.[1] It further provides in Section 961(b), 46 U.S.C. § 961(b), that the interest of the mortgagee shall not be terminated by the forfeiture of the vessel for violation of any law.[2]
 
 
 7
 By the note secured by the mortgage, the vessel's owners-mortgagors agreed to pay not only the principal and interest for the mortgage debt, but also, in the event of default, "to pay a reasonable attorney's fee" if the note was collected through judicial proceedings. The mortgagee agreement itself provided that, in the event of default in any installment payment, General Electric was entitled to declare the principal and all accrued interest to be payable forthwith, "together with reasonable attorney fees and costs of collection."
 
 
 8
 The general rule in almost all American jurisdictions is that attorney's fees and costs, when stipulated in the mortgage contract, may be validly recovered as part of the mortgage indebtedness secured. See, e.g., Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 219 (La.1982), as well as decisions cited at 59 C.J.S. "Mortgages", § 113e at 162-63, § 178d at 225-26, § 243 at 367 (1949). This general rule has been applied without comment in numerous preferred ship mortgage foreclosure cases. In the few reported decisions in which issue has been raised as to the priority under the Ship Mortgage Act of contractually-provided-for-attorney's fees and costs to enforce the mortgage, the decisions have uniformly held that these expenses to enforce the mortgage are entitled to the same priority and rank of payment as is the principal indebtedness secured by the mortgage, and are equally secured by the preferred mortgage lien.[3] "The preferred [ship] mortgage lien and priority also includes interest and attorney's fees if the contract so provides." Varian, "Rank and Priority of Maritime Liens", 47 Tul.L.Rev. 751, 759 (1973).
 
 
 9
 The government advances no sound reason why this general rule is not equally applicable when the vessel has been seized and judicially sold in simultaneous enforcement of a preferred ship mortgage and of a governmental criminal forfeiture.
 
 
 10
 The Ship Mortgage Act itself expressly provides that the interest of the mortgagee in a vessel "shall not be terminated by the forfeiture of a vessel for a violation of any law of the United States." § 961(b). The government cites no statutory or jurisprudential authority to support its contention that the forfeiture interest in the vessel constitutes any priming maritime lien. The two decisions it cites in support of its contention are completely inapposite; they did not concern attorney's fees or any issue discernibly relevant to the present litigation.[4] The government's argument that the sovereign immunity doctrine (unless waived) bars the award of attorney's fees "against" the United States, overlooks that the foreclosure action is not "against" the United States, but is rather a Congressionally authorized in rem action against the vessel to enforce a mortgagee's interest, which Congress expressly stated was not terminated by a forfeiture of the vessel to the federal government.
 
 Other Contentions
 
 11
 The other contentions of the government do not deserve extended comment.
 
 
 12
 (a) Excessive attorney's fees?
 
 
 13
 The government claims that the amount of attorney's fees awarded by the court was excessive. Without elaboration, we will simply state that the record supports the award. The litigation involved the complicated interplay of a forfeiture suit and a foreclosure action, as well as a vigorous contest between various maritime lienholders and the government. The number of hours and the hourly amount were supported by sworn testimony, as well as by affidavits. Despite two hearings at which the government was entitled to contest the amount awarded, it did not produce adverse witnesses. (Subsequently, it did file two affidavits contesting the amount, based solely upon the affiant's review of the court record.)"Where attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees as it has when applying a statute providing for a discretionary award." Cable Marine v. M/V Trust, 632 F.2d 1344, 1345 (5th Cir.1980). Of course, it may nevertheless, reduce the contractual attorney's fees claimed if it finds such an award "would be inequitable and unreasonable." Id. On appeal, the review is limited "to considering whether the district court abused its discretion in awarding attorney's fees." Copper Liquor, Inc. v. Adoph Coors Company, 624 F.2d 575, 581 (5th Cir.1980). Under the facts of this case, we are unable to find any abuse of the district court's discretion in the amount awarded as reasonable attorney's fees in the protection and enforcement of General Electric's ship mortgage.
 
 
 14
 (b) Government's custodial expenses before judicial seizure
 
 
 15
 Without citation of authority, the government contends that its expenses of seizing and maintaining the vessel before it was placed within the custody of the court should be awarded the same priority (superior to the preferred ship mortgage lien) as those expenses of seizure and preservation incurred after the vessel comes within the custody of the court (in custodia legis ) through arrest by the federal marshal as an officer of the court.
 
 
 16
 The forfeiture statute provides that the expenses of maintenance of custody shall be paid from the proceeds of any sale, 21 U.S.C. § 881(e). It does not, however, provide that these expenses are afforded any priority in the disbursement of the proceeds from the sale.
 
 
 17
 The preservation expenses before seizure are by definition and functional purpose not within the expenses in custodia legis alone (along with preferred maritime liens) entitled to priority in payment under § 953(b)(2) over the preferred ship mortgage lien. These custodia legis preferred expenses arise "out of the foreclosure proceedings and administering the custody after the vessel ... after it has been seized under legal process." General Electric Credit & Leasing Corporation v. Drill Ship Mission Exploration, 668 F.2d 811, 815 (5th Cir.1982) (emphasis the court's). See Varian, supra, 47 Tul.L.Rev. at 753-54. See also Rayon Y Celanese Peruana v. M/V PHGH, 471 F.Supp. 1363, 1369-70 (S.D.Ala.1979) (rejecting the government's claim for in custodia legis priority for its custodial expenses following its administrative seizure for forfeiture purposes, insofar as incurred before a judicial seizure to enforce a preferred maritime lien).
 
 Conclusion
 
 18
 For the reasons stated, we AFFIRM the judgment of the district court.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 § 953(b) provides as follows:
 [u]pon the sale of any mortgaged vessel by order of a district court of the United States in any suit in rem in admiralty for the enforcement of a preferred mortgage lien thereon, ... the preferred mortgage lien shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court.
 
 
 [2]
 § 961(b) provides as follows:
 [t]he interest of the mortgagee in a vessel of the United States covered by a mortgage, shall not be terminated by the forfeiture of the vessel for a violation of any law of the United States ....
 
 
 [3]
 European-American Banking Corporation v. M/S Rosaria, 486 F.Supp. 245, 272-73 (S.D.Miss.1979); Nova University of Avanced Technology, Inc. v. Motor Vessel Gypsy, 331 F.Supp. 721, 722 (S.D.Fla.1971); The Home, 65 F.Supp. 94, 95-96 (W.D.Wash.1946); The John Jay, 15 F.Supp. 937 (E.D.Pa.1936)
 
 
 [4]
 The Mariam, 66 F.2d 899 (9th Cir.1933); The Maberhex, 6 F.2d 415 (D.C. RI 1925)