UNITED STATES of America, Plaintiff,

v.

**SECURITY MARINE CREDIT CORPORATION, Claimant,**

and

**Leonel Martinez, Defendant.**

No. 89–341–CR.

United States District Court, S.D. Florida.

May 23, 1991.

Carol A. Wilkinson, Asst. U.S. Atty., for plaintiff U.S.

Ronald Dresnick, Miami, Fla., for defendant Leonel Martinez.

## MEMORANDUM AND ORDER

HOEVELER, District Judge.

THIS CAUSE IS before the court upon the motion of Claimant Security Marine Credit Corporation ("Security Marine") for attorneys' fees incurred in asserting its interest in property subjected to criminal forfeiture.

### I. Background

On June 16, 1989, a superseding indictment issued against the defendant Leonel Martinez charging him with the illegal importation and distribution of narcotics and initiating criminal forfeiture proceedings against him pursuant to 21 U.S.C. § 853. The My Three Sons VI, a seventy foot Hatteras Yacht, was one of the items of property subjected to forfeiture. Claimant Security Marine is holder of a promissory note and security agreement ("the note") entered into by the defendant and his wife to finance their purchase of the vessel. The note is secured by a First Preferred Ship Mortgage ("the mortgage") in favor of Security Marine. Both the note and the mortgage contain provisions requiring the Martinez' to pay Claimant's attorneys' fees

and court costs in the event collection proceedings become necessary.

Hours after the filing of the superseding indictment and initiation of criminal forfeiture, Security Marine filed a civil foreclosure action against the vessel, *in rem*, and against the Martinez', *in personam*, seeking recovery of its interest. *See Security Marine Credit Corp., Inc. v. M/V My Three Sons VI et al.*, Case No. 89–1248–Civ–Hoeveler. Security Marine's Complaint alleged that the Martinez' were in default of the note and security agreement as a result of the forfeiture proceeding and sought to collect the full amount owing under an accelerated payment clause. Concurrently, pursuant to provisions of the Ship Mortgage Act, *see* 46 U.S.C. § 951, recodified as 46 U.S.C. § 31325, Security Marine sought to enforce a maritime lien arising from its First Preferred Ship Mortgage.

In March of 1990, Martinez pled guilty to a continuing criminal enterprise violation. The My Three Sons VI was seized by the U.S. Marshal's Service during the course of these proceedings and eventually sold to a disinterested party for $975,000, which amount was deposited with the court. The government recognized the valid and unsullied interest of Security Marine in the vessel and agreed to the disbursement of $611,422.41 to Claimant from the deposited *res*. That figure represented the principal and interest then owing under the Martinez' promissory note. Security Marine now moves the court for an award of some $35,000 in attorneys' fees which it claims were spent in collecting its interest under the Martinez' loan obligations.

### II. Discussion

#### A. *Inapplicability of Federal Maritime Lien Statutes*

 Security Marine's claim for attorneys' fees relies initially on the premise that certain federal statutes which protect marine mortgages and establish priority of payment for maritime liens, *see* 46 U.S.C. §§ 31325 and 31326, apply to its claim as advanced in this criminal action.[1] Under

---

**1.** Security Marine's civil Complaint and the case law relevant to the instant discussion refer to

the prior codification of 46 U.S.C. §§ 31325 and 31326 under the Ship Mortgage Act, 46 U.S.C.

the relevant statutes, contractually-provided-for-attorneys' fees are generally recoverable in "the same priority and rank of payment as is the principal indebtedness secured by the [marine] mortgage, and are equally secured by the preferred mortgage lien." *General Elec. Credit Corp. v. Oil Screw Triton VI*, 712 F.2d 991, 994 (5th Cir.1983) citing *European–American Banking Corp. v. M/S Rosaria*, 486 F.Supp. 245, 272–73 (S.D.Miss.1979); *Nova University of Advanced Technology, Inc. v. Motor Vessel Gypsy*, 331 F.Supp. 721, 722 (S.D.Fla.1971); *The Home*, 65 F.Supp. 94, 95–96 (W.D.Wash.1946); *The John Jay*, 15 F.Supp. 937 (E.D.Pa.1936). *See also Bank of New Orleans & Trust Co. v. Big B Towboat Services, Inc.*, 435 F.Supp. 997, 1001 (E.D.Mo.1977).

Security Marine's initial premise is flawed, however, for the My Three Sons VI was not seized and sold under the Claimant's civil statutory framework in the course of enforcing a maritime lien. Rather, the vessel was seized and disposed of pursuant solely to the instant criminal forfeiture proceeding under 21 U.S.C. § 853. Claimant concedes that this much is true as a matter of procedure but urges the court to consider the sale of the vessel as having been effectuated under a *"de facto* consolidation" of this criminal forfeiture matter and Claimant's civil foreclosure action.[2]

Even if the court were inclined to fictionalize a *"de facto* consolidation," Security Marine was precluded here by the criminal forfeiture statute from bringing its civil *in rem* enforcement action. Security Marine, not having filed any *in rem* foreclosure action prior to the indictment, was barred once the indictment issued from "commencing an[y] action at law or equity against the United States concerning the validity of [its] alleged interest in the property ... subject to forfeiture ..." 21 U.S.C. § 853(k). As all right, title, and interest in the vessel had vested in the United States by the time Security Marine filed its foreclosure action,[3] the *in rem* action—to the extent it sought to establish Security Marine's claim as superior to that of the government-owner—constituted "an action at law or equity against the United States" within the meaning of 21 U.S.C. § 853(k).

Though in the strictest sense Claimant's *in rem* foreclosure was brought against the property rather than against the United States, the court believes that the reach of § 853(k) is broad enough to encompass third party *in rem* actions against property owned by the United States. In placing § 853(k) within the criminal forfeiture statute, Congress intended to require that all third party claims against property subject to criminal forfeiture which are asserted after initiation of the forfeiture proceedings be resolved within the framework established by § 853(n).[4] The legislative his-

§§ 911 *et seq. See specifically* 46 U.S.C. §§ 951 and 953. The revision and recodification of the Ship Mortgage Act and much of federal maritime law was accomplished by Congress in 1988 in an effort to consolidate, clarify, and streamline the disjointed mass of maritime statutes passed over time by Congress. House Report No. 98–338 at 113 (1988) U.S.Code Cong. & Admin.News 1983, 924. *See* Public Law 100–710 (1988). The effective date of the revised statutory framework was January 1, 1989, which was prior to the filing of Security Marine's civil Complaint. *Id.* The revision and recodification of 46 U.S.C. §§ 951 and 953 do not effect the substance of the Claimant's argument now before the court.

**2.** The government has argued consolidation would be inappropriate in that civil foreclosure proceeds *in rem* against the property itself while criminal forfeiture proceeds *in personam* against the defendant. *See U.S. v. Bissell*, 866 F.2d 1343, 1348 n. 3 (11th Cir.1989). The

government is mistaken to believe, however, that the court's manner of exercising jurisdiction over the subject property is at all relevant to the determination of the extent of Claimant's interest in the property now in the court's possession. In both types of actions, the claimant's interest, if awarded at all, is awarded against the property seized by the government. Conceptually, at least, consolidation is not precluded due to the different jurisdictional natures of civil foreclosure and criminal forfeiture.

**3.** 21 U.S.C. § 853(c) provides in pertinent part: "All right, title, and interest in property [subject to forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture under this section." *See also U.S. v. Stowell*, 133 U.S. 1, 16, 10 S.Ct. 244, 33 L.Ed. 555 (1890).

**4.** Section 853(k)(2) leaves open the possibility that claims to the subject property initiated prior to the filing of the indictment could be pursued in addition to or consolidated with the criminal forfeiture proceeding.

tory of the statute supports an expansive reading of its application to third party claims. The Senate Report on the Comprehensive Crime Control Act of 1984 states that the purpose of § 853(k) is to assure:

> a more orderly disposition of both the criminal case and third party claims. Indeed, it is anticipated that the [§ 853(n)] hearing procedure should provide for more expedited consideration of third party claims than would the filing of separate civil suits.

Senate Report 98–225 at 207, reprinted in 1984 U.S.Code Cong. & Ad.News at 3390.[5] Commentators who have considered the contours of § 853(k) agree: "the only avenue provided under the legislation to assert a property interest in matter subjected to forfeiture is a special proceeding set forth in Section [853] itself." 2 B. GEORGE, CONTEMPORARY FEDERAL CRIMINAL PRACTICE: The Comprehensive Crime Control Act of 1984 at 608 (Supp. 1988). *See also* D. SMITH, PROSECUTION AND DEFENSE OF FORFEITURE CASES § 14.08 at 14–43 (1991) (§ 853(n) provides the "exclusive procedure" for asserting third party claims to forfeited property).

A claimant's *in rem* foreclosure action is especially deserving of invalidation where, as here, the action was instituted as a direct consequence of the criminal forfeiture. Not only did Security Marine file its foreclosure action after the indictment in this matter was issued, but its Complaint states that the sole reason for the Martinez' default under the note and the mortgage was Claimant's belief that the security of the loan—the vessel—was in danger as a result of Leonel Martinez' arrest and the government's seizure of the My Three Sons VI. Security Marine's Complaint does not allege that the Martinez' were in default for non-payment or any other reason which would have given them cause to pursue foreclosure independent of Martinez' arrest. To recognize an *in rem* action here would enable Security Marine's procedural maneuverings to accomplish that which the statute explicitly bars: the creation of duplicitous and obfuscating litigation over property subjected to criminal forfeiture.

Security Marine places great stock in the Fifth Circuit's holding in *Triton VI* as an example of a court awarding a claimant attorneys' fees under federal maritime law in a consolidated forfeiture/foreclosure proceeding. *See* 712 F.2d at 993–94. Yet *Triton VI* is entirely unhelpful here, for the government in that instance had proceeded under the civil, rather than the criminal, forfeiture statute. *Id.* at 993; *see* 21 U.S.C. § 881 *et seq.* The civil forfeiture statute has no internal procedure for adjudicating third party claims like that in § 853(n) and no provision akin to § 853(k) barring alternative methods of asserting one's claim after initiation of forfeiture proceedings. Instead, the civil statute dictates application of the customs laws for addressing third party claims and disposing of forfeited property. 21 U.S.C. § 881(d).[6] *See In re Newport Savings and Loan Ass'n*, 928 F.2d 472 (1st Cir.1991). Assuming enforcement of the maritime lien was squared with application of the customs laws by the trial court in *Triton VI*—a point not at issue before the appellate court—consolidation of the enforcement action with the civil forfeiture was proper there. *Id.* Criminal forfeiture is simply not as sympathetic to consolidation with

---

**5.** Both the commentators and the legislative history cited herein discuss forfeiture under 21 U.S.C. § 853 and under the criminal RICO statute, 18 U.S.C. § 1963, interchangeably. The forfeiture provisions in both statutes were passed at the same time and are essentially identical. *See,* Senate Report 98–225 at 209–14, reprinted in 1984 U.S.Code Cong. & Ad.News at 3182, 3392–97.

**6.** 21 U.S.C. § 881(d) provides in pertinent part:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred ... under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof ...

civil foreclosure actions.[7] *But see id.* (separate foreclosure action also likely barred in civil forfeiture where real property is at issue due to Quiet Title Act, 28 U.S.C. § 2409a).

Security Marine cannot avoid the ineluctable truth: the subject vessel was seized and sold pursuant solely to the criminal forfeiture provisions of 21 U.S.C. § 853, and was not—and could not have been—affected by Security Marine's civil *in rem* foreclosure action under 46 U.S.C. § 31326. Consequently, any right to attorneys' fees arising from proceedings under the federal maritime lien statutes is simply inapplicable against the government here.[8] As the only avenue for Claimant to recover its interest in the vessel was by proceeding with a verified claim for the property under 21 U.S.C. § 853(n), any right to attorneys' fees by Claimant must arise wholly from the criminal forfeiture statute.

## B. *Right to Attorneys' Fees Under 21 U.S.C. § 853*

■ The parties have not presented to the court, nor is the court aware, of any reported decision addressing whether the attorneys' fees incurred by an innocent lienholder asserting its claim in a criminal forfeiture proceeding are recoverable where the note and mortgage allow for payment of such fees from the defendant. Though there is now good reason to believe such fees are obtainable in this Circuit,[9] the larger issue need not be reached for the court finds Security Marine lacks standing to pursue its attorneys' fees claim under the criminal forfeiture statute.

In reaching this conclusion the court has had to examine the clauses in the note and mortgage giving rise to Security Marine's claim for attorneys' fees. While either provision would justify an award of attorneys' fees in a default action, the same cannot be said for their application to a criminal forfeiture proceeding. Paragraph 31 of the note provides in relevant part:

> If you default under this Note and the full amount becomes due and payable, you agree to pay us our collection costs ... as allowed by law. If we refer the matter to an attorney who is not a salaried employee of ours for collection, you will pay our attorney's reasonable fees and court costs....

Though the provision arguably could be stretched to apply to *any* collection subsequent to the obligor's default and full payment becoming due, the court finds such a rendering would not conform with the true intent evidenced by the parties' language. The collection conceived of by this clause

---

7. Even if the government in *Triton VI* had proceeded under the criminal forfeiture statute, consolidation may have been possible nonetheless. The forfeiture proceedings there were initiated only *after* the claimant had begun its foreclosure action. *Triton VI*, 712 F.2d at 993. The claimant in *Triton VI*, then, would not have been barred, as Security Marine is here, from proceeding with its civil foreclosure by § 853(k)(2)'s prohibition on the post-indictment filing of civil actions. *See* note 4, *supra.*

8. Security Marine, of course, could have pursued its claim for attorneys' fees under 46 U.S.C. § 31325(b)(2)(A) or § 31325(b)(2)(B) as well as directly under the terms of the note and mortgage had it prevailed in its *in personam* action against the Martinez'. Claimant stipulated, however, to dismissal of that action after sale of the vessel and the disbursement of principal and interest.

9. Subsequent to Claimant's motion and the government's response, the Eleventh Circuit Court of Appeals decided this precise issue with respect to claims for attorneys' fees under 21 U.S.C. § 881, the civil forfeiture statute. In *U.S. v. Six Parcels of Real Property*, 920 F.2d 798 (11th Cir.1991) the court held that such fees are recoverable from the *res* seized by the government in the same manner as the principal indebtedness. *Id.* at 799. It cannot be overlooked that the protection given to innocent owners in the criminal forfeiture statute was effectuated in light of Congress's action and experience with protecting innocent owners under the largely similar civil forfeiture statute. Indeed, there is nothing in the express language or legislative history of 21 U.S.C. § 853 to suggest that Congress intended innocent owners under the criminal forfeiture statute to be treated differently for any purpose than they are under the provisions of civil forfeiture. *See, e.g.,* Senate Report 98–225 at 209–14, reprinted in 1984 U.S.Code Cong. & Ad.News at 3392–97; *see also* D. SMITH, PROSECUTION AND DEFENSE OF FORFEITURE CASES § 14.08 at 14–53 (1991) (scope of third party property interests recognized under criminal and civil forfeiture appear to be analogous).

refers only to a collection pursuant to a default. Such a collection never took place. Claimant's recovery of its principal and interest only occurred within the confines of this criminal forfeiture proceeding. Paragraph 31 of the note fails to provide Claimant with any right to claim attorneys' fees under such circumstances. Faced with the same facts in a civil forfeiture proceeding, the Fourth Circuit found a claimant's otherwise valid request for attorneys' fees "inapplicable" where the mortgage only provided for attorneys' fees "in the event of collection pursuant to a default." *In re Metmor Financial, Inc.*, 819 F.2d 446, 448 n. 3 (4th Cir.1987).

On the other hand, the attorneys' fees clause in the mortgage is sufficiently broad to encompass criminal forfeiture. Paragraph 23 of the mortgage, in pertinent part, provides that:

> if proceedings are brought to foreclose this Mortgage (judicial if required), [mortgagor agrees to pay] attorney's fees and court costs.

Though, strictly speaking, this matter is not a foreclosure action, the mortgage has been "foreclosed" in this proceeding in the commonly understood sense of the term: determination of the existence and extent of a mortgage lien and the subjection to sale of the property pledged for its satisfaction. 55 Am.Jur.2d, Mortgages, § 553 at 531 (1971).

The problem that arises for Security Marine is that, while attorneys' fees incurred under the note are secured by the mortgage, no corresponding security exists for attorneys' fees originating under the mortgage itself. Paragraph 4 of the mortgage limits the mortgage's security to coverage of only the debt arising under the note.[10] No other provision of the mortgage indicates that additional obligations generated under the mortgage itself are also secured

thereby.[11] Where the agreement itself does not expressly indicate that attorneys' fees and other foreclosure costs are secured by the mortgage, such fees remain unsecured. *See, e.g., Loewenthal v. Coonan*, 135 Cal. 381, 67 P. 1033 (1902). *Cf. Kim v. Peoples Federal S & L Ass'n*, 538 So.2d 867, 869 (Fla.App. 1 DCA 1989) (where antecedent note provided for attorneys' fees but guaranty did not, lower court erred to allow attorneys' fees in suit enforcing guaranty).

Assuming Security Marine has a valid property interest in its contractual attorneys' fees, it comes before the court, then, as an unsecured creditor. This circuit has not yet addressed the issue of whether unsecured creditors can recover against property seized by the government pursuant to criminal forfeiture. Of the three major cases on the issue, the Sixth Circuit Court of Appeals has held that unsecured creditors categorically lack standing to assert claims in criminal forfeiture proceedings. *United States v. Campos*, 859 F.2d 1233 (6th Cir.1988). Two other circuits have found that unsecured creditors, in their status as claimants against the defendant's estate generally rather than against any specific asset, can assert their claims under § 853 where the government has seized all known assets of the defendant's estate. *United States v. Reckmeyer*, 836 F.2d 200 (4th Cir.1987); *United States v. Mageean*, 649 F.Supp. 820 (D.Nev.1986), *aff'd mem.* 822 F.2d 62 (9th Cir.1987). Because the government did not seize all of Martinez' assets, the court need not decide whether to apply the "entire estate" exception to circumvent the practice of denying recovery to unsecured creditors. Non-forfeited assets yet exist against which Security Marine can pursue its claim for attorneys' fees. *See* Government's Notice of

---

**10.** Paragraph 4 provides: This Mortgage secures the obligations (the "Debt") now due or which may become due in the future under the Note given to [Security Marine] as lender by [the Martinez'].

**11.** *See, e.g.*, the mortgage clause in dispute in *United States v. American Nat. Bank of Jacksonville*, 255 F.2d 504, 505 (5th Cir.1958):

> The Mortgagors hereby agree that the lien of this mortgage shall, in addition to the note hereby secured, secure all sums of money which may now be due or may hereafter become due to the Mortgagee from the Mortgagors. This additional security provision shall remain in effect for so long as the promissory note hereby secured remains unpaid.

Release of Restraining Order dated November 14, 1990. It follows that Claimant cannot demonstrate a specific legal or equitable interest in the particular assets forfeited to the government. Accordingly, Security Marine lacks standing to assert its claim here. *Reckmeyer,* 836 F.2d at 206 n. 3. *Cf. United States v. $4,255,000.00,* 762 F.2d 895, 907 (11th Cir.1985).[12]

For the foregoing reasons, it is hereby

ORDERED and ADJUDGED that Security Marines' Motion for Attorneys' Fees is DENIED.

DONE and ORDERED.

Gerald S. Lesher of Cooney, Ward, Lesher & Damon, West Palm Beach, Fla., for plaintiff.

Martin J. Barab and Daniel A. Hart of Law Offices of Martin J. Barab, Beverly Hills, Cal., and Diane M. Perry, Fort Lauderdale, Fla., for defendant.

---

**12.** Unsecured creditors do, however, have the right to file for remission or mitigation of forfeiture under the Department of Justice's regulation governing such procedures. *See* 28 C.F.R. § 9.6(a). The fact that a claimant has no legal or equitable interest in forfeited property under the statute does not preclude remission or mitigation where provisions of the regulation can be met and where principles of fairness so dictate.