**In re Petition of Brian SMOUHA, Jacques Delvaux and Constant Franssens, Commissaires of BCCI Holdings (Luxembourg) S.A., Debtors in a Foreign Proceeding.**

**Nicholas Collwyn STURGE, et al., Appellants,**

**v.**

**Brian SMOUHA, Jacques Delvaux and Constant Franssens, as Commissaires of Bank of Credit and Commerce International Holdings (Luxembourg) S.A.; Brian Smouha, Commissaire of Bank of Credit and Commerce International, S.A., and Christopher Morris, Nicholas Roger Lyle and John Parry Richards, as Joint Provisional Liquidators of Bank of Credit and Commerce International, S.A.; and Ian Wight and Robert Axford, as Joint Provisional Liquidators of Bank of Credit and Commerce International (Overseas) Ltd., and the United States of America, Appellees.**

**No. 91–B–13569 (JLG), 92 Civ. 0254 (JFK).**

United States District Court, S.D. New York.

Jan. 23, 1992.

Weil, Gotshal & Manges, New York City, (Michael K. Stanton, Harvey R. Miller, Steven A. Reiss, Deryck A. Palmer, Laura M. Sillins, of counsel), for appellants.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, (Beth A. Kaswan, Katherine A. Staton, Steven M. Haber, Asst. U.S. Attys., of counsel), for U.S., appellee.

Shearman & Sterling, New York City (Ronald DeKoven, Frederick T. Davis, Jonathan L. Greenblatt, Stuart K. Fleischmann, Jerome S. Fortinsky, of counsel), for BCCI Representatives, appellees.

## OPINION AND ORDER

KEENAN, District Judge:

### INTRODUCTION

On January 16, 1992, attorneys for Nicholas Collwyn Sturge, an underwriter for Lloyds of London and a putative creditor of Bank of Credit and Commerce Internation-

al ("BCCI"), hand-delivered to this Court's chambers an appellate brief in support of Sturge's appeal from a bankruptcy court order of January 8, 1992. With Sturge's appellate brief and the voluminous record on appeal, Appellant's counsel also submitted a memorandum of law in support of an emergency motion for an expedited hearing on appeal, for a stay of the bankruptcy court order pending the appeal, and for a temporary restraining order enjoining "implementation" of the Plea Agreement's forfeiture provisions.

Within the hour, the Court called a conference with counsel for both the appellant and the appellees. After granting Sturge's request for an expedited appeal, the Court scheduled the hearing for January 21, 1992, the earliest possible date that still permitted appellees to prepare their memoranda in opposition to the appeal and Sturge to prepare his reply.

After having heard argument from Sturge, the Foreign Petitioners and the Government at the January 21 hearing, and after close review of the record on appeal and the parties' submissions, the Court affirms the January 8, 1992 order of the Bankruptcy Court.[1]

### BACKGROUND

On July 5, 1991, the Bank of Commerce and Credit International ("BCCI") collapsed, threatening the financial security of over 1,000,000 depositors and creditors worldwide. Mismanagement, self-dealing and fraud by BCCI's former management left an unbridgeable gap of billions of dollars between realizable assets and ultimate liabilities, a shortfall for which the depositors and other creditors are now responsible. In a coordinated effort at damage control, bank regulators in Luxembourg and the Cayman Islands, where the principal BCCI entities were incorporated, as well as regulators in Great Britain, directed the closure of BCCI operations in those countries, *see* Designation of Record

---

1. Because this decision reaches the merits of the underlying appeal, Sturge's request for a stay of the Bankruptcy Court's order is mooted.

("DOR") at A, pp. 3–4, and petitioned their respective courts for appointment of the BCCI Representatives, Appellees in this action. These court-appointed Representatives are charged with locating and protecting all BCCI assets, wherever they are found, for ultimate distribution to all BCCI depositors and creditors by the courts in Luxembourg and the Cayman Islands, where BCCI insolvency proceedings are now pending.

On August 1, 1991, Brian Smouha, Jacques Delvaux, Constant Franssens, Christopher Morris, Nicholas Roger Lyle, John Parry Richards, Ian Wight and Robert Oxford (collectively, the "BCCI Representatives"), filed petitions pursuant to section 304 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Section 304, entitled "Cases Ancillary to Foreign Proceedings," allows foreign representatives to collect and shelter assets that belong to a debtor in a foreign proceeding and are found in the United States. Ultimately, the foreign representatives repatriate the assets, which are then administered in the foreign proceeding. Through their section 304 petitions, the BCCI Representatives sought to shelter the approximately $550 million worth of BCCI assets located in the United States, intending to make them available to the worldwide pool of BCCI creditors.

On August 2, 1991, United States Bankruptcy Judge James L. Garrity issued a temporary restraining order that prohibited all persons receiving notice of it from disposing of or otherwise acting against BCCI assets and from proceeding with litigation against BCCI. Appellant Sturge, who had filed a civil RICO action against a division of BCCI ("BCCI Overseas") in Florida,[2] was permitted to negotiate an amendment to the TRO that permitted him to litigate his action up to judgment but enjoined him from foreclosing on any judgment he might receive.

On November 15, 1991, a federal grand jury in the United States District Court for the District of Columbia filed an indictment against four BCCI entities and several individuals, charging them with massive criminal RICO violations.[3] In an effort to prevent forfeiture of *all* of BCCI's United States assets, and therefore to ensure that at least some part of the U.S. assets would ultimately be contributed to the worldwide fund for distribution to BCCI creditors, the BCCI Representatives entered into negotiations with the prosecutors. What ultimately emerged from these negotiations was the Plea Agreement, which was signed by the parties and filed in the United States District Court for the District of Columbia on December 19, 1991.

The Plea Agreement provides for BCCI pleading guilty to charges brought by Robert M. Morgenthau, the New York County District Attorney, and Jay B. Stephens, the United States Attorney for the District of Columbia. It further provides that the United States Attorney General would exercise his powers under section 1963(a) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1963(a), to obtain the forfeiture of all BCCI assets in the United States. Half of the forfeited assets would be transferred overseas to a fund for distribution to creditors worldwide, and the remaining assets would be distributed by the Attorney General to various governmental entities and possibly to some of BCCI's "victims" pursuant to 18 U.S.C. § 1963(g).

On December 30, 1991, Judge Joyce Hens Green of the United States Court for the District of Columbia ordered that the arraignment and offer of plea would be made on January 9, 1992. After BCCI was arraigned and proffered a guilty plea on

---

**2.** *Sturge v. Bilbeisi, et al.,* No. 90–2976–Civ.– Moreno (S.D.Fla.), alleges that BCCI Overseas, along with one of its customers, Munther Bilbeisi, participated in an international coffee smuggling, arms dealing and money laundering conspiracy to defraud interested Lloyds of London underwriters, who had issued marine insurance contracts on coffee shipments that defendants allegedly smuggled into the United States. *See* Appellant's Brief at 12–13.

**3.** This indictment joined a New York state indictment that had been filed by a grand jury in the Supreme Court of New York County before the section 304 proceeding was instituted.

that date, Judge Green deferred her decision on whether to accept the Plea Agreement until January 24, 1992. She also ruled that third parties claiming an interest in the criminal proceedings could submit papers to her explaining why they should be heard to contest the criminal plea. Sturge had already filed a motion to intervene in the criminal proceedings, however, and since January 9 has supplemented its papers to the D.C. Court.

This Plea Agreement is the eye of the storm that has raged, unabated, since the closing days of 1991. During Christmas week 1991, the BCCI Representatives served copies of the Plea Agreement on the parties in interest. Sturge immediately petitioned the Bankruptcy Court for an order enjoining implementation of the Plea Agreement's forfeiture provision on the ground that it "eviscerates the [section 304 proceeding] and destroys any semblance of equitable distributions to Sturge or other unsecured creditors." *See* Appellant's Brief at 16. Sturge insisted that the Bankruptcy Court had the authority to enjoin the BCCI Representatives and the Government from consummating the forfeiture provision under the "inherent equity powers" of the Bankruptcy Court under section 105 of the Bankruptcy Code.

After a full hearing on the motion,[4] Bankruptcy Judge Garrity read into the record the Order that is the subject of this appeal. Denying the motion for an order enjoining implementation of the forfeiture provisions, Judge Garrity ruled as follows: 1) that the BCCI Representatives' TRO did not bar implementation of the Plea Agreement; 2) that the record of the hearing was insufficient to find that the BCCI Representatives had shown an abuse of process in seeking approval of the Plea Agreement; 3) that in light of his ruling, there was no need to reach the issue of whether the exceptions to the automatic stay contained in section 362(b) of the Bankruptcy Code are broad enough to encompass the RICO forfeiture; and 4) that the sole remedy of a

party claiming to have an interest in the property to be forfeited under the Plea Agreement is to petition the district court in which the criminal RICO case is pending for a hearing pursuant to 18 U.S.C. § 1963(*l*).

## DISCUSSION

Sturge urges this Court to reverse the Bankruptcy Court order declining to enjoin the BCCI Representatives and the Government "from proceeding with the forfeiture aspect of the Plea Agreement." *See* Brief of Appellant ("Sturge Br.") at 17. Sturge insists that this appeal "does *not* concern (i) intervening in a criminal proceeding, (ii) enjoining a criminal proceeding, (iii) undermining a criminal proceeding, or (iv) even title to a criminal's assets." *See* Sturge Reply at 2–3. Sturge makes painstaking efforts to avoid the appearance of asking this Court to enjoin the Government and the BCCI Representatives from proceeding with their carefully negotiated plea agreement and to usurp Judge Green's jurisdiction to sentence the criminal defendants appearing before her. Yet that would be precisely the effect of this Court's granting Sturge's request.

### Standard of Review

■ While the Bankruptcy Court's conclusions of law are subject to de novo review, its findings of fact are to be sustained unless clearly erroneous. *See, e.g., In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir.1990). The Bankruptcy Court's findings as to mixed questions of fact and law are also subject to the clearly erroneous standard. *In re Navigation Technology Corp.,* 880 F.2d 1491, 1493 (1st Cir. 1989). Similarly, where the Bankruptcy Court has construed its own prior order, and where that construction is attacked on appeal, the reviewing court applies a clearly erroneous standard of review. *In re Ranch House of Orange–Brevard, Inc.,* 773 F.2d 1166, 1168 (11th Cir.1985). Final-

---

4. Sturge had joined in the January 6, 1992 motion by the Republic of Panama for an order under section 105 continuing the temporary restraint against governmental fines, penalties and other judgments. *See* DOR at N. He also sought an order enjoining the BCCI Representatives and the Government from implementing the forfeiture provision. *See* DOR at O.

ly, where the Bankruptcy Court has denied a party's request for injunctive relief, that denial is to be affirmed unless the court "abused its discretion." *In re Chateaugay Corp.*, 109 B.R. 613, 619 (S.D.N.Y.1990); *see In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.1990).

The Opinion will address each facet of Judge Garrity's January 8, 1992 ruling in turn.

### 1. Sovereign Immunity

Finding that the government had not waived its sovereign immunity in the section 304 case before him, Judge Garrity ruled that he therefore "lack[ed] jurisdiction over the government to enjoin their participation in the forfeiture aspects of the plea agreement." *See* DOR at Q, p. 4–5.

Although Sturge argues that he is not seeking to enjoin the government, the United States correctly observes that granting Sturge the relief he seeks would effectively "withdraw the power to prosecute violators of United States laws from the United States Executive Branch." *See* Government's Memorandum in Opposition to Sturge Appeal ("Gov. Opp.") at 20. As Judge Garrity found, section 304 of the Bankruptcy Code does not countenance such a result.

■ Sovereign immunity prohibits suits against the United States except in those instances in which it has been expressly waived by Congress. *United States v. Shaw*, 309 U.S. 495, 502, 60 S.Ct. 659, 662, 84 L.Ed. 888 (1940); *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

The judiciary may not extend the waiver of sovereign immunity "more broadly than has been directed by Congress." *Shaw*, 309 U.S. at 502, 60 S.Ct. at 662. In enacting the Bankruptcy Code, Congress explicitly waived sovereign immunity in three limited instances, which are laid out in subsections (a), (b) and (c) of section 106.[5] None of these exceptions to sovereign immunity applies in a section 304 proceeding. *See, e.g., In Re Petition of Ernst & Young, Inc.*, 135 B.R. 521 (S.D.Ohio, 1991) (Gov.Opp. Exhibit 4) (sections 106(a) and (c) do not cause a waiver of sovereign immunity in a section 304 proceeding); *In Re Willington Convalescent Home, Inc.*, 850 F.2d 50, 54 (2d Cir.1988), *aff'd sub nom. Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (government must file formal claim against the estate to trigger § 106(b)).

■ Having found that the United States had not waived its sovereign immunity, Judge Garrity correctly concluded that he lacked jurisdiction to enjoin the government from participating in the Plea Agreement. From this it follows that the Court could not validly grant any injunctive relief to Sturge: it could neither force BCCI to withdraw its proffered guilty plea, nor prevent Judge Green from accepting the Plea Agreement. Thus, the defense of sovereign immunity effectively precludes any interference in the criminal proceeding.

### 2. Parties Interested in Property Forfeited under RICO

■ Judge Garrity ruled that Sturge's application to the bankruptcy court to enjoin the forfeiture of BCCI's assets in the criminal proceeding before Judge Green was explicitly barred by section 1963(i) of

---

5. Section 106 provides as follows:

"(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units."

the RICO statute, 18 U.S.C. § 1963(i). Section 1963(i) provides as follows:

> Except as provided in subsection (*l*), no party claiming an interest in property subject to forfeiture under this section may—(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

Subsection (*l*), to which subsection (i) refers, creates a specific mechanism by which "any person, other than the defendant, asserting a legal interest in property" that is subject to forfeiture may file a claim asserting that interest. That claim would then be evaluated by the court hearing the criminal RICO proceeding under the procedures set out in subsection (*l*).

The interplay of subsections (i) and (*l*) clearly dictates that a party seeking to assert an interest in assets subject to forfeiture can neither intervene in the criminal proceeding itself, *see United States v. Security Marine Credit Corp.*, 767 F.Supp. 260 (S.D.Fla.1991), nor commence a separate action, as Sturge attempted to do. His sole remedy is to pursue his claims under subsection (*l*) by petitioning the D.C. District Court for a hearing on his claim. *See* S.Rep. at 207–209, *reprinted* in 1984 U.S.Code Cong. & Admin.News 3390–92; *United States v. Kramer*, 912 F.2d 1257 (11th Cir.1990). There is no conflict between subsection (i) and section 105 of the Bankruptcy Code, which permits the Bankruptcy Court to issue any order necessary or appropriate to carry out the provisions of the Code. Even if there were an inconsistency, it would be resolved in favor of section 1963(i), as it is the more specific statutory provision. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987) ("where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment").

Section 1963(i) is a carefully crafted provision permitting parties like Sturge to make claims to property subject to forfeiture under the RICO statute. Judge Garrity correctly ruled that this section precludes issuance of an order under Bankruptcy Code section 105 enjoining implementation of the forfeiture provision, as such an order would impermissibly intervene in the RICO proceeding. Sturge's right to make a claim to the property subject to forfeiture is adequately protected by section 1963(i), and Sturge may already have triggered his right to be heard under subsection (*l*) by filing papers with Judge Green asserting his interest in the property.

### 3. Equitable Principles

Having ruled that section 1963(i) of the RICO statute and principles of sovereign immunity barred issuance of the injunctive relief that Sturge requested, Judge Garrity held that general equitable principles also foreclosed the Bankruptcy Court's interference in the pending criminal case before Judge Green, absent extreme or exceptional circumstances that this case does not present.

It is axiomatic that "equity will not interfere with the criminal processes, by entertaining actions for injunction or declaratory relief in advance of criminal prosecution." *Zemel v. Rusk*, 381 U.S. 1, 19, 85 S.Ct. 1271, 1282, 14 L.Ed.2d 179 (1965). This general principle holds firm except in the most extraordinary and compelling circumstances, as for example where the movant properly alleged and was prepared to prove that the prosecution he sought to enjoin was brought in bad faith without the intent of obtaining a valid conviction. *See, e.g., Dombrowski v. Pfister*, 380 U.S. 479, 482, 85 S.Ct. 1116, 1118, 14 L.Ed.2d 22 (1965); *Younger v. Harris*, 401 U.S. 37, 53–54, 91 S.Ct. 746, 754–755, 27 L.Ed.2d 669 (1971). Sturge has alleged no such unique or compelling circumstances in this case. He merely argues that the TRO that Judge Garrity issued in the section 304 proceeding was broad enough to enjoin the forfei-

ture of BCCI's assets under the Plea Agreement. This argument is without merit.

■ Recognizing that the automatic stay provision of the Bankruptcy Code does not apply to section 304 proceedings, *see* 11 U.S.C. § 362(a), Sturge argues that Judge Garrity's TRO was "as broad as" an automatic stay under section 362(a) and thus acts to block implementation of the forfeiture provision. This argument fails for two reasons. First, the TRO explicitly provided that "[n]othing contained within this Order shall be construed to enjoin and/or restrain, without limitation, any judicial, administrative or regulatory action or proceeding that is not stayed under 11 U.S.C. § 362." DOR at H, p. 9. Thus, the TRO was no broader than section 362, which explicitly exempts from the operation of the automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). Because section 362(b)(1) would remove the RICO forfeiture from the ambit of the automatic stay provision, *see, e.g., In Re James*, 940 F.2d 46 (3d Cir.1991), the TRO by its own terms precludes Sturge's interpretation that it authorizes the injunctive relief that he seeks. *See* DOR at H, p. 9. Sturge's argument is also unpersuasive because Judge Garrity himself ruled that the TRO in no way barred the forfeiture. *See* DOR at Q, p. 3–4. That determination was not clearly erroneous. *See In Re Ranch House of Orange–Brevard, Inc.*, 773 F.2d 1166, 1168 (11th Cir.1985). For these reasons, Judge Garrity correctly ruled that general equitable principles, as well as the TRO issued in the section 304 proceeding, preclude issuance of any injunctive relief that would act to interfere in the pending criminal proceeding.

### 4. Standards for Injunctive Relief

■ Finally, Judge Garrity ruled that Sturge had failed to meet his burden for obtaining injunctive relief, and that this failure was an independent ground for denying his request for an injunction. Sturge has to show irreparable harm and either 1) likelihood of success on the merits or 2) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). First, Sturge has failed to prove irreparable harm. Section 1963(*l*) of the RICO statute gives Sturge an opportunity to assert an interest in the property subject to forfeiture by filing a claim in the RICO proceeding. Further, Sturge may petition the Attorney General for relief under section 1963(g), which gives the Attorney General discretion to "grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a [RICO] violation ... or take any other action to protect the rights of innocent persons." Finally, Sturge may stake his claim to BCCI assets in the liquidation proceedings pending in Luxembourg and the Cayman Islands. The section 304 proceeding in Bankruptcy Court in the Southern District is ancillary to the proceedings in those forums, and was initiated to marshal BCCI's U.S. assets for return to the foreign liquidation proceedings. The ultimate result of the Plea Agreement will be to infuse half of BCCI's U.S. assets into the pool of assets that will ultimately be distributed in the foreign liquidation proceedings.

Sturge has at least three different venues in which to seek relief, yet claims that he will suffer irreparable harm if he is not permitted to enjoin the forfeiture under the Plea Agreement. This argument is intolerable. The equities clearly disfavor Sturge, who is essentially seeking not only to "cut in line" ahead of innumerable other BCCI creditors and depositors, but to derail a Plea Agreement of tremendous sociopolitical significance that will ultimately send $275 million to the worldwide "victims" fund. Not only will Sturge not suffer irreparable harm if his application is denied, but countless other creditors and depositors may well suffer irreparable harm if it were granted. For these reasons, Judge Garrity correctly ruled that Sturge failed

to prove that he is entitled to injunctive relief.

■ Sturge's appellate brief avoids the specifics of Judge Garrity's ruling, relying almost exclusively on the argument that the Bankruptcy Court obtained "exclusive in rem jurisdiction" over BCCI's U.S. assets upon the filing of the BCCI Representative's section 304 petition. He asserts that the assets are under the Bankruptcy Court's "administration" and that they must be distributed "substantially in accordance with the order or priorities prescribed by the Bankruptcy Code." This argument is unpersuasive. First, the filing of a section 304 proceeding does not create a bankruptcy "estate" that must be "administered" by the Court. A section 304 proceeding does not result in distribution of assets, nor does it give rise to the automatic-stay protections afforded by section 362 of the Bankruptcy Code. Rather, section 304 provides representatives of foreign bankruptcy proceedings a remedy through which they can marshal and eventually repatriate the debtor's local assets to the foreign forum. The Bankruptcy Court did not have "exclusive jurisdiction" of BCCI's assets, nor did it have the authority to overrule the carefully negotiated, and court-approved, determination of the BCCI Representatives that the Plea Agreement advanced their ultimate goal of protecting BCCI's worldwide assets for distribution in the foreign liquidation proceedings.

## CONCLUSION

The Plea Agreement at the heart of this case is a precisely written, scrupulously constructed and rigorously negotiated document. It provides for the turnover of half of BCCI's United States assets ·to the "Worldwide Victims Fund," from which the BCCI Representatives will distribute payments "to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the laws of coun-tries subscribing to recognized norms of international justice." DOR at L, p. 16–17. The Fund is to be monitored by the court-appointed BCCI Representatives, who will be assisted where appropriate by the Bank of England, the Serious Fraud Office, the Public Prosecutor of Luxembourg, the Attorney General of the Cayman Islands, the FBI and the District Attorney of New York County. The Plea Agreement was approved and signed by the Deputy Attorney General and other officials of the Department of Justice, by six United States Attorneys, by senior officials of no fewer than six federal agencies, including the Board of Governors of the Federal Reserve System, the Securities and Exchange Commission, the Federal Deposit Insurance Corporation, and the Comptroller of the Currency, by the New York County District Attorney and by the BCCI Representatives. It was approved by the Luxembourg and Cayman Islands courts, as well as by Justice Peter McQuillan of New York County Supreme Court upon BCCI's pleading guilty to charges filed by the New York County District Attorney. *See* Appendix to Brief of BCCI Representatives, Exhibit 1, pp. 25–26.

This Court will not sanction any interference in this global resolution of all the controversies involving BCCI in the United States. Therefore, the Bankruptcy Court order of January 8, 1992 is affirmed in its entirety. Sturge's appeal is dismissed, and is ordered removed from the Court's active docket.

SO ORDERED.