TRANSAMERICA COMMERCIAL FI-
NANCE CORPORATION, Successor in
interest to Borg–Warner Leasing, a di-
vision of Borg–Warner Acceptance Cor-
poration, Plaintiff–Appellant, Macleans
Ship Supply of Florida, Incorporated;
Montauk Marine Basin, Incorporated,
Plaintiffs–Appellees,

v.

F/V SMILELEE, (Official No. 629503),
her engines, boilers, tackle, equipment,
freights, furniture and apparel, In Rem;
Peter S. Harrison, In Personam, Defen-
dants,

v.

JAC LIN FISHING COMPANY,
INCORPORATED, Third
Party Defendant.

TRANSAMERICA COMMERCIAL FI-
NANCE CORPORATION, Successor in
interest to Borg–Warner Leasing, a di-
vision of Borg–Warner Acceptance Cor-
poration, Plaintiff–Appellee, Macleans
Ship Supply of Florida, Incorporated;
Montauk Marine Basin, Incorporated,
Plaintiffs,

v.

Peter S. HARRISON, In Personam,
Defendant–Appellant,

and

F/V Smilelee, (Official No. 629503), her
engines, boilers, tackle, equipment,
freights, furniture and apparel, In Rem,
Defendant,

v.

JAC LIN FISHING COMPANY,
INCORPORATED, Third
Party Defendant.

Nos. 90–2113, 90–2114.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1991.

Decided Sept. 4, 1991.

James M. Shuler, Kass, Hodges & Mas-
sari, Tampa, Fla. (Nancy Stiles Stith, Smi-
ley & Mineo, Charleston, S.C., on brief), for
plaintiff-appellant Transamerica.

Gordon D. Schreck, Buist, Moore,
Smythe & McGee, Charleston, S.C., for
plaintiff-appellee Montauk Marine Basin.

Charles Henry Raley, Jr., Cooper & Ra-
ley (John Hughes Cooper, Cooper & Raley,
on brief), Charleston, S.C., for defendant-
appellant Harrison.

Marvin D. Infinger, Sinkler & Boyd,
P.A., Charleston, S.C., for plaintiff-appellee
Macleans Ship Supply.

Before SPROUSE and WILKINSON,
Circuit Judges, and MULLEN, District
Judge for the Western District of North
Carolina, sitting by designation.

## OPINION

SPROUSE, Circuit Judge:

This is an appeal of the district court's determination of the priority between a preferred ship mortgagee,[1] Transamerica Commercial Finance Corporation ("Transamerica"), as successor to Borg-Warner Acceptance Corporation ("Borg-Warner"), and two maritime lienors, Macleans Ship Supply of Florida, Inc. ("Macleans"), and Montauk Marine Basin, Inc. ("Montauk").

The facts are complicated, although not disputed. On January 30, 1981, Peter Harrison borrowed $125,000 from Borg-Warner to purchase the F/V *Smilelee*, which Harrison used to fish for swordfish and tuna. On February 10, 1983, Harrison obtained additional capital from Borg-Warner by executing a new note and mortgage on the vessel in the amount of $160,000.

In January 1985, Harrison again approached Borg-Warner to discuss financing to purchase a coastal freighter, the *Mary S.* BorgWarner agreed to finance the purchase up to $50,000, to provide an additional $130,000 in financing for the conversion of the *Mary S* into a long-line fishing vessel, and to finance the sale of the *Smilelee* to a purchaser with suitable credit. On January 16, 1985, Borg-Warner loaned Harrison $50,000 which he used to purchase the *Mary S.*

On January 18, 1985, Jac-Lin Fishing ("Jac-Lin") contracted to purchase the *Smilelee* from Harrison. On March 21, 1985, Jac-Lin, Borg-Warner, and Harrison executed an agreement in which Jac-Lin assumed the mortgage on the *Smilelee*, and Harrison agreed to guarantee Jac-Lin's performance. The assumption agreement, by its terms, did not relieve Harrison of any of the obligations under the note and mortgage.

On March 21, 1985, Borg-Warner loaned Harrison an additional $130,000 to convert the *Mary S.* This brought the total amount of loans from Borg-Warner to $305,000: $125,000 for the purchase of the *Smilelee* plus $180,000 for the purchase and renovation of the *Mary S.*

Between April and October 1985, Jac-Lin purchased numerous supplies and necessaries for the *Smilelee* from Montauk, and had substantial repairs done to the vessel by that company, resulting in unpaid invoices totalling $17,964.59, which amount constituted a maritime lien on the vessel.[2]

The actual cost of converting the *Mary S* far exceeded Harrison's original estimate of $130,000, and by the end of 1985, he was unable to fulfill his financial obligation to Borg-Warner. Shortly after making the January 1986 payment, Harrison listed the *Mary S* for sale.

Jac-Lin was also experiencing difficulty in meeting its obligation under the assumed *Smilelee* mortgage. After paying the May 1986 installment, it went into default. In August 1986, Borg-Warner reclaimed the *Smilelee* and, pursuant to the terms of the assumption agreement, transferred ownership of the vessel back to Harrison. However, Harrison could not make the mortgage on both boats. He sold the *Mary S* in April 1987 for $140,000. After deducting the ten percent sales commission charged by the listing agent, the sale yielded a net price of $133,000.

While the *Smilelee* was being operated by Harrison, fishing equipment and other necessaries were supplied by Macleans; $17,591.50 went unpaid. The parties do not dispute that Macleans has a valid maritime lien on the *Smilelee* for the debt of $17,591.50.

Following the sale of the *Mary S*, Harrison owed Borg-Warner $44,576.01 on that vessel and $153,909.46 on the *Smilelee*. In 1987, Harrison consolidated these debts into a single loan with a principal balance of $198,485.47 and signed a new note and mortgage on the *Smilelee* dated April 30,

---

1. It is undisputed that Transamerica possesses a "preferred ship mortgage" under the definition provided in 46 U.S.C.App. § 922.

2. Montauk filed notice of its lien with the United States Coast Guard in Miami on December 11, 1985. The lien was made a matter of public record and was noted on the *Smilelee's* title abstract. All parties concede that Montauk has a valid lien against the *Smilelee* in the amount of $17,964.59.

1987. Harrison then proceeded to default in his obligations under the 1987 mortgage. As a result, on October 30, 1987, Macleans filed an arrest action in the United States District Court for the District of South Carolina.[3] Following the arrest, both Borg–Warner and Montauk intervened in the action to protect their respective interests.

The *Smilelee* was eventually sold to the J.S. Dick Corporation for $198,485.47, the exact amount of the 1987 mortgage on the vessel. The district court confirmed the sale in an order dated June 24, 1988. The order required J.S. Dick to execute a note and mortgage in favor of Transamerica, successor in interest to Borg–Warner, equal to the purchase price plus interest. The order also required Transamerica to pay the expenses incurred while the vessel was under arrest. In view of the possibility that the court might later find that the claims of Macleans and/or Montauk deserved priority over Transamerica's claim, Transamerica was required to post a letter of undertaking to secure those claims. The court further ordered that in the event that the claims of Montauk and/or Macleans were held superior to Transamerica's mortgage, Transamerica would have to pay the claims or convey an interest in the J.S. Dick note and mortgage.

Following confirmation of the sale, the parties briefed and argued their respective priority rights to the sales proceeds of the vessel before the district court. By order dated February 15, 1990, the district court found that Transamerica had priority over the amount of the sales proceeds representing the existing indebtedness on the 1983 mortgage ($153,909.46) and that Montauk and Macleans had priority as to that amount which exceeded this indebtedness ($44,576.01). The district court found, and Transamerica conceded, that the latter had priority only to the extent of the amount

secured by the 1983 mortgage, and not to the additional amount secured by the 1987 mortgage, which amount became subordinate to the intervening maritime liens upon the mortgage's extinguishment and renewal. The court reduced each party's claim to the sales proceeds by deducting each party's pro rata share of the custodial expenses which had been paid by Transamerica to maintain and store the vessel while it was under arrest, and which totalled $27,175.80.

Transamerica filed this appeal, contending that the district court erred in giving priority to the intervening maritime liens of Montauk and Macleans over its claims for attorney's fees, interest, and custodial expenses. Harrison later filed his appeal from the deficiency judgment rendered against him and the dismissal of his counterclaim.

■ First, as to the attorney's fees and interest claimed by Transamerica, the general rule regarding priorities is that attorney's fees and interest accrued in the enforcement of a preferred ship mortgage are entitled to the same priority as the mortgage itself. *General Elec. Credit Corp. v. O/S Triton, VI*, 712 F.2d 991, 994 (5th Cir.1983); *Nova Univ. of Advanced Tech., Inc. v. M/V Gypsy*, 331 F.Supp. 721, 722 (S.D.Fla.1971). This is especially so where, as here, the terms of the mortgage make provision for and state the order of priority for the payment of attorney's fees and interest in the event of a judicial sale to satisfy a judgment. *See J. Ray McDermott & Co. v. Vessel Morning Star*, 431 F.2d 714, 724 (5th Cir.1970) (the obligations of the parties are to be determined from the mortgage itself), *cert. denied*, 409 U.S. 948, 93 S.Ct. 271, 292, 34 L.Ed.2d 21 (1972).

The district court declined to apply this principle to Transamerica's claims, instead invoking principles of equity to counterbalance the "absurd result" which would re-

---

**3.** Under the Federal Rules of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims C, a plaintiff bringing an *in rem* action against a vessel to enforce a maritime lien may seek a warrant for the arrest of the vessel upon filing a verified complaint. Such a warrant may issue if the court finds that

the conditions for an action *in rem* appear to exist. The property is delivered to the custody of the marshal or paid to the court. *See also* 46 U.S.C.App. § 952 (authorizing appointment of receiver for enforcement of preferred mortgage lien).

sult if Transamerica's claims took priority over the claims of Macleans and Montauk. The court seemed particularly disturbed by the fact that, under the general rule, once the attorney's fees ($20,000)[4] and interest ($37,501.89) were paid, in addition to the principal ($153,909.46), there would be nothing left from the $198,485.47 received from the sale of the *Smilelee* to satisfy the debts owed Macleans and Montauk. Therefore, the court noted, Macleans would be "deprived of any benefit from its successful arrest of the vessel."

The district court erred, however. The principles protecting priority of a mortgage are legal, not equitable, in nature. *See* 46 U.S.C.App. § 953 (stating priority for preferred mortgage lien over all claims, with exceptions). As such, priorities do not depend upon the adequacy of the proceeds to satisfy all claims. Moreover, we are concerned that the district court's method of determining priority would result in a race to the courthouse to file suit for arrest of a vessel.

Where the benefit of expenditures for the preservation and maintenance of an arrested vessel inures to the benefit of all parties with a stake in its proceeds, the general rule is that such expenses will be given preference. This is especially so where, as here, these custodial expenses were made upon order of the court. *New York Dock Co. v. S/S Poznan*, 274 U.S. 117, 122–23, 47 S.Ct. 482, 484–85, 71 L.Ed. 955 (1927); *General Elec. Credit & Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 815 (5th Cir.1982). Our resolution of the issue regarding the priorities of the attorney's fees and interest, however, ultimately relieves us of the need to decide the priority of the custodial fees paid by Transamerica, since once the attor-

ney's fees and interest are paid out, there will be no residue from the proceeds for payment of the custodial fees.

The final two issues relate to Harrison's cross-appeal against Transamerica: first, Harrison argues that the district court's award for attorney's fees exceeds the amount stipulated by the parties and should be reduced to $20,000.[5] We agree that the amount of the fees should be limited to the amount originally agreed upon. Second, Harrison had filed a counterclaim against Borg–Warner for breach of fiduciary duty for failure to inform him of his continuous defaults and deficiencies. He argues that Florida law makes trust a "one-way street" such that the confidence he placed in Borg–Warner gave rise to a fiduciary relationship. We disagree. The district court correctly held that the relationship "did not involve the exchange of trust necessary to the creation of a fiduciary relationship." We are convinced that Borg–Warner never accepted the trust necessary to give rise to a fiduciary duty.

For the foregoing reasons, we reduce the attorney's fees allowed Transamerica to $20,000, vacate the judgment of the district court on the priority issues, and remand for entry of judgment consistent with the views expressed in this opinion. We affirm the district court's ruling on the dismissal of Harrison's counterclaim.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.

---

**4.** The district court stated Transamerica was entitled to $31,513.69 for attorney's fees. However, in response to Harrison's cross-appeal on this issue Transamerica agrees that the parties had stipulated $20,000 as the amount, and the

district court noted as much in its FINDINGS OF FACT.

**5.** *See supra,* note 4.